UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                     :
United States of America,                                            :    11-CR-430 (ARR)
                                                                     :
               Plaintiff,                                    :
                                                                     :    MEMORANDUM AND
   -against-                                                       :    ORDER
                                                                     :
Sassine Razzouk,                                                     :
                                                                     :
               Defendant.                                    :
                                                                     :
-------------------------------------------------------------------- X

On June 10, 2011, Sassine Razzouk, a former employee of Con Edison Co. of New York, Inc. ("Con Edison") pleaded guilty to accepting bribes in violation of 18 U.S.C. § 666(a)(1)(B) and three counts of tax evasion in violation of 26 U.S.C. § 7201 pursuant to a cooperation agreement. *See* Information, ECF No. 16; Waiver of Indictment, ECF No. 17; Min. Entry for Plea Agreement Hr'g, ECF No. 18. On April 3, 2018, I sentenced the defendant to concurrent sentences of seventy-eight months of imprisonment on the bribery count and sixty months on the tax evasion counts, followed by three years of supervised release. *See* Sentencing Min. Entry, ECF No. 83; Oral Sentencing Op. 13 ("Oral Sent. Op."), ECF No. 85; Tr. of Sentencing 69:1–7 ("Sent. Tr."), ECF No. 104. I also ordered the defendant to comply with the $6,515,809 forfeiture money judgment and to pay $1,982,238.34 in restitution to the Internal Revenue Services ("IRS") and $6,867,350.51 plus prejudgment interest in restitution to Con Edison and its insurer National Union Insurance Company. Oral Sent. Op. 14, 18; Statement of Reasons Concerning Restitution 21 ("Restitution SOR"), ECF No. 84. For the purposes of this Memorandum and Order, I presume the parties' familiarity with the facts and circumstances of this case, as detailed in my previous opinions. *See* Oral Sentencing Op.; Restitution SOR.

Presently before me is defendant's motion for bail pending appeal and a stay of his financial penalties. *See* Def.'s Mot. for Bail Pending App. ("Def.'s Bail Mot."), ECF No. 97. For the reasons stated below, defendant's motion for bail pending appeal is denied. Because I have only just received defendant's Personal Financial Statement, I reserve judgment on defendant's motion for a stay of his financial penalties.

## DISCUSSION

Under 18 U.S.C. § 3143, a court "shall order" that a person who has filed an appeal be detained when they have been found guilty and sentenced to imprisonment "unless" the court finds:

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and
(B) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in-- (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). If a defendant has been found guilty of a crime, there is "a presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (citing 18 U.S.C. § 3143(a)). The defendant bears the burden of rebutting that presumption by clear and convincing evidence. *Id.* This burden is "plainly substantial." *Id.* If the defendant makes the requisite showing, a judge "*shall*" order his or her release. *Id.* (quoting 18 U.S.C. § 3143(b)(1)).

The government does not contend that the defendant is a flight risk or that he poses a danger to society. In light of the defendant's persuasive evidence to this effect, *see* Def.'s Bail Mot. 2, I agree.[1] The resolution of this motion therefore depends on whether defendant's appeal

---

[1] Neither party addresses whether the defendant's appeal is for the purpose of delay. I therefore decline to do so as well.

"raises a substantial question of law or fact likely to result in" reversal, a new trial, or a sentence that either does not include a term of imprisonment or includes a term of imprisonment less than the expected duration of the appeal process.[2]

To meet his burden, defendant must demonstrate first that his appeal raises a substantial question. A question is "substantial" if it presents "a 'close' question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). It must be "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Id.* (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985)). Defendant must then show that the question is "so integral to the merits of the conviction on which [he] is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* (quoting *Miller*, 753 F.2d at 23). The appeal "must result either in reversal, [a reduced sentence less the expected duration of the appeal process,] or a new trial on *every* count of conviction for which imprisonment has been imposed." *United States v. Foley*, 851 F. Supp. 507, 509 (D. Conn. 1994) (citing *Morison v. United States*, 486 U.S. 1306, 1306 (1988)) (emphasis added).

Defendant contends that he intends to raise a number of issues on appeal that constitute "substantial" questions of law or fact. *See* Def.'s Bail Mot. 3–4. His primary argument is that his appeal will raise substantial questions regarding the restitution order I imposed based on the Supreme Court's recent decision in *Lagos v. United States*, 138 S. Ct. 1684 (2018). Def.'s Bail Mot. 3–4. *Lagos* held that, under the Mandatory Victims Restitution Act of 1997 ("MVRA"), a defendant cannot be forced to reimburse a victim for expenses incurred during an internal investigation of the defendant's illegal actions, as distinct from a government investigation into

---

[2] To date, the defendant has served no prison time.

3

or prosecution of those actions. 138 S. Ct. at 1687. Defendant also argues that his appeal will "raise several other substantial issues," including: (1) whether bribery is an "offense against property" for purposes of the MVRA; (2) whether Con Edison suffered a loss that mandated restitution; (3) whether the government breached the cooperation agreement; and (4) whether defendant's allocution as to the bribery offense was insufficient. Def.'s Bail Mot. 4.

First, defendant's arguments concerning restitution are irrelevant. The restitution order had no bearing on defendant's sentence for bribery. As I made clear at sentencing, I calculated the loss amount for purposes of the United States Sentencing Guidelines ("U.S.S.G.") based on the amount of bribes that the defendant took, not based on any demonstrated loss to Con Edison. Sent. Tr. 45:16–48:12. Therefore, as the government argues, even if the restitution order were vacated for any of the reasons that the defendant proffers, defendant's conviction for bribery and his corresponding sentence would not be affected.[3] *See* Gov.'s Opp'n to Def.'s Bail

---

[3] Although I decline to address defendants' arguments regarding restitution because they are not material to the disposition of his motion for bail pending appeal, the parties should not mistake my silence for agreement or acceptance. On the contrary, based on the overwhelming evidence in the sentencing record, I do not consider whether Con Edison suffered a loss to be a "close question." *See* Restitution SOR 3–15. Defendant's contention that a *Fatico* hearing would have changed my mind is unwarranted for two reasons. First, as I made clear at sentencing, defense counsel never suggested that he wanted to call certain witnesses to testify on the issue of loss. Sent. Tr. 10:25–11:13. Second, despite this fact, I *did* allow defense counsel to call whomever he wanted. *Id.* at 13:10–11. The fact that defense counsel called only his client who provided no new information and who presented as a thoroughly incredible witness does not mean that I did not afford the defendant sufficient opportunity to make his case.

  I similarly do not find whether the bribery at issue in this case constitutes an "offense against property" under the MVRA to be a "close question." Defendant's attempt to extrapolate from *Lagos* that "the Supreme Court intends to apply the federal criminal restitution statute narrowly," such that there is now a substantial question as to whether bribery constitutes an "offense against property," is unconvincing. Def.'s Bail Mot. 1. As defendant himself acknowledges, *Lagos* was narrowly focused on the issue of investigation costs—nothing more. *Id.* Regardless, the Second Circuit has held that an employee can be liable for restitution under the MVRA where his illegal acts cause his employer to suffer a monetary loss. *See United States v. Bahel*, 662 F.3d 610, 648–49 (2d Cir. 2011) (holding that, under the MVRA, an employee can be forced to pay restitution in the amount of his salary because "his salary was plainly 'property' that belonged to [his employer], at least some of which [his employer] lost as a result of [his] offense"); *see also United States v. Skowron*, 529 F. App'x 73, 73 (2d Cir. 2013) ("A victim's pecuniary losses may be considered lost 'property' [under the MVRA] where the victim has been deprived of 'money to which it [is] entitled by law.'") (second alteration in original) (summary order) (quoting *United States v. Bengis*, 631 F.3d 33, 40 (2d Cir. 2011)). Indeed, the Second Circuit is not alone in its approach to this question. *See, e.g.*, *United States v. Ritchie*, 858 F.3d 201, 210 (4th Cir. 2017) ("Congress could not have intended to exclude from the broad, mandatory reach of the MVRA those unfortunate victims who suffer property loss as a result of an offense that doesn't contain as an element a reference to 'property.'"). Nothing in *Lagos* suggests that the Second Circuit's approach will or should change.

4

Mot. 3 ("Gov.'s Opp'n"), ECF No. 99 ("[T]here is no reason why [vacating the restitution order] would result in a 'reversal' of the conviction itself or a substantial downward revision to the term of imprisonment imposed for the conviction.").

Second, it is not necessary to address whether the sufficiency of the defendant's bribery allocution constitutes a "substantial" question because the answer to the question does not affect the defendant's sixty-month concurrent sentences for tax evasion.[4] I agree with the government that it is highly unlikely that the defendant's appeal will take longer than five years to resolve. Gov. Opp'n 2. Regardless of whether this question is "substantial," therefore, defendant's appeal would not result in reversal, a new trial, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process "on every count of conviction for which imprisonment has been imposed." *Foley*, 851 F. Supp. at 509; *see id.* at 510 ("Even were the appellate court to vacate the jury's verdict on Count One, such a decision would not automatically invalidate the remainder of the defendant's sentence or cause a recalculation of the sentencing guidelines as to the remaining counts."); *see also Randell*, 761 F.2d at 125–26 (holding that the defendant did not carry his burden of showing that his appeal would raise a "substantial question of law or fact . . . on all of the counts for which he received prison terms" where the questions he intended to raise on appeal would not affect his conviction for tax evasion).

Third, there is no substantial question as to whether the government breached the cooperation agreement, such that the defendant's guilty pleas—including those for tax

---

Finally, to the extent that the defendant believes that *Lagos* merits reconsideration of the restitution order as to the investigative costs awarded, he is welcome to move for reconsideration or to make this argument on appeal.

[4] I nevertheless reiterate that I find this argument—made two days before sentencing—spurious and, thus, hardly a "close" call. *See* Oral Sent. Op. 3.

evasion—would have to be vacated. Defendant argues that the government's decision not to make a substantial assistance motion pursuant to U.S.S.G. § 5K1.1 and its opposition to the inclusion of acceptance-of-responsibility points in the computation of the defendant's offense level under the Guidelines amounted to a breach of the cooperation agreement.[5] Def.'s Reply to Gov.'s Opp'n ("Def.'s Reply") 1–3, ECF No. 101; *see* Def.'s Bail Mot. 4. For the first time in his reply, the defendant also argues that the government's actions constituted "bad faith" and that the government supplied the court with "incomplete and misleading information." Def.'s Reply 3. The government argues that "[t]he defendant ignores that the government adopted these positions only in the wake of the defendant's own material breach of the cooperation agreement—a point that meets with no serious challenge in either" of the defendant's submissions. Gov.'s Resp. to Def.'s Reply 1 ("Gov.'s Resp."), ECF No. 102.

"[W]here a plea agreement provides that the government will file a 5K1.1 motion if it determines that the defendant has provided substantial assistance, a court[] . . . 'may review [the agreement] . . . to see if the government has lived up to its end of the bargain.'" *United States v. Leonard*, 50 F.3d 1152, 1157 (2d Cir. 1995) (final two alterations in original) (quoting *United States v. Knights*, 968 F.2d 1483, 1486 (2d Cir. 1992)). "To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement." *United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005) (quoting *United States v. Lawlor*, 168 F.3d 633, 636 (2d Cir. 1999)). "[A]ny ambiguity should be resolved against the government." *United States v. Miller*, 993 F.2d 16, 20 (2d Cir. 1993) (citing *United States v. Feigenbaum*, 962 F.2d 230, 234 (2d Cir. 1992)).

---

[5] Section 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1.

"[W]here the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor," as is the case here, "that discretion is limited by the requirement that it be exercised fairly and in good faith." *United States v. Khan*, 920 F.2d 1100, 1105 (2d Cir. 1990); *see* Gov.'s Opp'n Ex. 1, ¶ 6 ("Coop. Ag."), ECF No. 99-1. That is, "[t]he government may reject the defendant's performance of his or her obligations only if it is honestly dissatisfied." *Khan*, 920 F.2d at 1105; *see also United States v. Reeves*, 296 F.3d 113, 116 (2d Cir. 2002) ("To meet its obligation of good faith, the government need only demonstrate honest dissatisfaction with the defendant's efforts."). When a defendant alleges that the government acted in bad faith in refusing to move for a downward departure, "the government may rebut this allegation by explaining its reasons for refusing to depart." *Knights*, 968 F.2d at 1487.[6] The government cannot cite reasons that, for example, "relate to circumstances that preceded the making of the agreement" or rely on the fact that the defendant's testimony was "inconsistent" with that of another witness. *Id.* at 1488.

In this case, it is not "fairly doubtful" that the cooperation agreement was perfectly clear as to the defendant's responsibilities and that the defendant—not the government—breached the agreement when he surreptitiously met with Rodolpho Quiambao and offered to perjure himself at Quiambao's trial. *See* Oral Sent. Op. 2. The cooperation agreement states:

> The defendant agrees not to reveal his cooperation, or any information derived therefrom, to any third party without prior consent of the Office. . . . The defendant must at all times give complete, truthful, and accurate information and testimony, and must not commit, or attempt to commit, any further crimes. Should it be judged by the Office that the defendant has failed to cooperate fully, . . . has committed or attempted to commit any further crimes, or has otherwise violated any provision of this agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement,

---

[6] I note that if the government rebuts a defendant's allegation, the defendant must then make a showing of bad faith "to trigger some form of hearing on that issue." *Khan*, 920 F.2d at 1106. Defendant did not allege bad faith at sentencing and does not ask for a hearing here.

7

> including (a) not to oppose a downward adjustment of three levels for acceptance of responsibility . . . and (b) to file the [5K1.1] motion. . . . The defendant will also be subject to prosecution for any federal criminal violation of which the Office has knowledge.

Coop. Ag. ¶¶ 3(c), 8. The contingent nature of the government's obligations is beyond dispute. It is clear that if the defendant attempted to commit perjury, a crime, the government would be released from its obligations under the agreement. That is what happened here.

It is also not a "close question" whether the government acted in bad faith—it did not. In justifying its decision not to move for a downward departure, the government did not rely on circumstances that preceded the making of the agreement. *See Knights*, 968 F.2d at 1488. When the government signed the agreement, it did not know that the defendant—its star witness in Quiambao's case—would attempt to commit and suborn perjury *in that case*, thus rendering him unreliable and his assistance largely valueless. Given that the government could not proceed to trial against Quiambao on the counts for which Razzouk was a necessary witness—which involved the bulk of the bribes that Quiambao made—it is hard to imagine a better reason for the government to be dissatisfied with the defendant's assistance. *See* Sent. Tr. 50:1–5; Oral Sent. Op. 9. Likewise, the government did not "ignore [the] defendant's efforts at cooperation simply 'because the defendant [supplied] information that the government [did] not want to hear.'" *Knights*, 968 F.2d at 1488 (quoting *Khan*, 920 F.2d at 1105). In fact, as I made clear at sentencing, the government conveyed the magnitude of the defendant's assistance to me in the context of both Quiambao and others—though it was under no obligation to do so following the defendant's breach—and I considered it in my determination of the defendant's sentence. *See* Sent. Tr. 4:9–16.

With respect to the acceptance of responsibility points, the cooperation agreement states, "[b]ased on the information known to it now, the Office will not oppose a downward

8

adjustment of three levels for acceptance of responsibility under U.S.S.G. § 3E1.1." Coop. Ag. ¶ 2. When the parties signed the agreement, the government was not aware of the position that the defendant would take at sentencing, namely that he never accepted bribes. Oral Sent. Op. 2. It is not bad faith to oppose a downward adjustment for acceptance of responsibility when the defendant quite literally ceased accepting responsibility for the crime to which he pled guilty. Moreover, as stated above, the defendant's breach of the agreement freed the government from all of its contingent obligations. Again, this is not a "close" call that merits bail pending appeal.

In further support of his argument that the government acted in bad faith, the defendant contends that the government submitted and I relied upon "woefully inadequate" and "misleading" proffer notes of the case agents "without giving the defendant the opportunity to cross examine" them. Def.'s Reply 3. The defendant presents new evidence, including an e-mail from his wife and excerpts of transcripts of recordings of his conversations with his prior attorney, that allegedly show that the defendant has been steadfast in his position that the money he received from Quiambao was for legitimate work he did overseas.[7] Def.'s Reply 3–7. Razzouk contends that the case agents omitted from their proffer session notes the statements that, he argues, indicate that he did not take bribes and, thus, that the government acted in bad faith by presenting incomplete and misleading information to the court. *See id.*

The evidence does not support defendant's argument. As the government observes, the proffer session notes *did* include information about the defendant's overseas ventures with Quiambao. *See* Gov. Resp. 2–3 (citing, among others, Gov.'s Resp. to Def.'s Objs. to the Presentence Report, Ex. B, ¶¶ 22–25, ECF No. 50-1). Thus, to the extent that I relied on the

---

[7] It is hardly appropriate for the defendant to offer new arguments and new evidence in his reply brief. *Cf. Keefe ex rel. Keefe v. Shalala*, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995). Nevertheless, because the government had an opportunity to address defendant's arguments, I will as well.

9

proffer session notes, I was aware of the defendant's position—which defense counsel also made repeatedly in his submissions—and was not led astray by the government. I note also that the defendant did not ask for the case agents' testimony, even though they were present at the sentencing hearing and defense counsel called his client to the stand. *See* Sent. Tr. 13:19–14:3; 51:21–22. Moreover, even if the proffer session notes were incomplete, I did not rely on them exclusively—or even primarily—to make my findings. *See* Oral Sent. Op. 4–8.

More importantly, the new evidence that the defendant adduces does not change the fact that he—not the government—breached the cooperation agreement. Even if it were true that Razzouk made many statements to the government about how the money he received from Quiambao was for legitimate work done overseas and that the government omitted all evidence of those statements from its submissions to the court—which the government did not do—the defendant's attempted perjury would still have constituted a breach of the cooperation agreement. And such a breach would still have freed the government from its obligation to move for a downwards departure.

To the extent that the defendant proffers this evidence in support of his argument that there was no factual basis for his guilty plea—which, again, I need not address—he does so to no avail. In light of the abundant documentary evidence supporting the defendant's conviction and the defendant's wholly incredible testimony at the sentencing hearing,[8] I do not find that the new evidence raises a "substantial question" as to the facts supporting his guilty plea.

---

[8] For example, the defendant testified that he received checks from Quiambao for many years but that he never actually looked at them and, thus, never saw and could not explain why their memo lines contained written notations referring to Con Edison projects that he worked on with Quimbao's company. *See* Sent. Tr. 34:1–17. The defendant also testified that his overseas work for Quiambao began in 2007 and ended in 2010—but he started receiving checks from Quiambao in 1999 and continued to receive them after 2010. Sent. Tr. 32:4–25.

10

Because the defendant's appeal does not raise a substantial question of law or fact likely to result in reversal, an order for a new trial, or a reduced sentence, his motion for bail pending appeal is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion is denied.

SO ORDERED.

                                                                              /s/
                                                        Allyne R. Ross
                                                        United States District Judge

Dated:        June 21, 2018
                Brooklyn, New York