UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                    :
UNITED STATES OF AMERICA,                                           :   11-CR-430 (ARR)
                                                                    :
                                                                    :
        -against-                                                   :
                                                                    :   **OPINION & ORDER**
SASSINE RAZZOUK,                                                    :
                                                                    :
                 *Defendant*.                                       :
                                                                    :
------------------------------------------------------------------- X

ROSS, United States District Judge:

In this bribery action, the Second Circuit has remanded my April 3, 2018 restitution order with instructions to reexamine awarding $771,021.50 in investigative costs to Consolidated Edison Company of New York, Inc. ("ConEd") in light of the Supreme Court's decision in *Lagos v. United States*, 138 S. Ct. 1684 (2018). Mandate 15–16, ECF No. 148; Restitution Order 17–19, ECF No. 84. The government argues that ConEd is still entitled to restitution for investigative costs after *Lagos*, Gov't's Br. 6–8, ECF No. 150, but defendant, Sassine Razzouk, disagrees, Def.'s Br. 3–6, ECF No. 152. For the following reasons, I decline to grant any restitution for ConEd's investigative costs.

## BACKGROUND

On June 10, 2011, defendant, Sassine Razzouk, pleaded guilty to all counts of a four-count information charging him with accepting bribes, in violation of 18 U.S.C. § 666 (Count One), and tax evasion, in violation of 26 U.S.C. § 7201 (Counts Two through Four). Information, ECF No. 16; Minute Entry, ECF No. 18. His convictions stem from a bribery scheme to defraud his employer, ConEd. Restitution Order 1. As part of the scheme, Rodolfo Quiambao, the President

1

and CEO of Rudell & Associates Inc. ("Rudell"), an engineering and design firm, paid Mr. Razzouk $8,178,184.86 in bribes between January 2006 and January 2010 to obtain contracts with ConEd. *Id.* at 3. Mr. Quiambao recouped the costs of the bribes paid by overcharging ConEd for the work his firm performed. *Id.*

On April 3, 2018, I sentenced Mr. Razzouk to seventy-eight months' imprisonment[1] and ordered him to pay $6,867,350.51 in restitution to ConEd (and ConEd's insurer, the National Union Insurance Company ("National Union")), plus prejudgment interest. *Id.* at 1, 23; Crim. J. 3, ECF No. 86. This amount included $771,021.50 for ConEd's "investigation costs." Restitution Order 21. These costs relate to ConEd's hiring of the law firm Davis Polk & Wardwell LLP, which in turn retained the auditing firm of KPMG LLP, to conduct a forensic audit of work performed and invoices submitted by Rudell throughout the bribery scheme. *Id.* at 6. This internal investigation began after the announcement of Mr. Razzouk's arrest. *Id.* The KPMG audit was not the only one that reviewed ConEd's losses from the bribery scheme: National Union also commissioned an audit performed by Grassi & Co. *Id.* at 7–8.

I awarded restitution for ConEd's investigative costs under 18 U.S.C. § 3663A(b)(4), a provision of the Mandatory Victims Restitution Act ("MVRA"), which requires "reimburse[ment]" to "the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." In doing so, I relied on *United States v. Amato*, in which the Second Circuit affirmed restitution under this provision "for attorney's fees and

---

[1] On April 19, 2020, I granted Mr. Razzouk's motion for compassionate release. *See* Compassionate Release Order 11, ECF No. 136. I modified Mr. Razzouk's remaining sentence to thirty-six months' home confinement, followed by an additional twelve-month period of supervised release. *Id.* at 11–13.

accounting costs incurred by an internal investigation that uncovered fraud." Restitution Order 18 (citing 540 F.3d 153, 159 (2d Cir. 2008)).

ConEd originally had sought $3,060,360.09 relating to KPMG's audit, an amount that encompassed not only the cost of investigating Mr. Razzouk's wrongdoing but also that of investigating Mr. Quiambao's misconduct after Mr. Razzouk pleaded guilty. *Id*. I declined to include the costs of investigating Mr. Quiambao, finding that those expenses "were not necessary to investigating or prosecuting [Mr. Razzouk's] offenses of conviction" under the MVRA. *Id.* I also limited the costs of investigating Mr. Razzouk to those incurred before he pleaded guilty on June 10, 2011, finding that only those expenses could have been "necessary to investigating or prosecuting [Mr. Razzouk's] offenses of conviction"—as opposed to those of other defendants in related criminal cases. *Id.* at 18–19.

Mr. Razzouk later appealed several aspects of his convictions and sentence, including the restitution award to ConEd. Notice of Appeal, ECF No. 90. Meanwhile, nearly two months after I issued my restitution order, the Supreme Court decided *Lagos v. United States*, 138 S. Ct. 1684 (2018). There, the Supreme Court determined that when 18 U.S.C. § 3663A(b)(4) refers to "necessary" expenses "incurred during participation in the investigation or prosecution of the offense," "investigation" means only a government investigation, not a private one. *Lagos*, 138 S. Ct. at 1688. The Court left open the question of whether the statute "would cover [investigative] expenses incurred during a private investigation that was pursued at a government's invitation or request." *Id.* at 1690. Nevertheless, *Lagos* abrogated *Amato* to the extent that it affirmed restitution for private investigative costs without considering whether the government invited that investigation—the original basis for awarding ConEd investigative costs. *Id.* at 1687; Restitution Order 18. In response, the Second Circuit vacated Mr. Razzouk's restitution order insofar as it

3

awarded investigative costs to ConEd and remanded the issue in light of *Lagos*.² Mandate 16. Noting that I "did not consider whether the government had invited the investigation or if the MVRA should apply to such an investigation," the Second Circuit specifically instructed me to decide "whether, and if so, how the limitations articulated in *Lagos* apply to this restitution order." *Id.*

## DISCUSSION

The government presents two arguments for why ConEd remains entitled to $771,021.50 for investigative costs under the MVRA after *Lagos*: (1) regardless of whether the government invited the KPMG audit, it became the "core evidence" grounding ConEd's restitution request and in that way was a "'necessary . . . expense[] incurred during participation in the investigation or prosecution'" of Mr. Razzouk; and in the alternative, (2) the investigative costs ConEd seeks were incurred "to provide assistance to the government in response to an invitation for help with [Mr. Razzouk's] active criminal prosecution." Gov't's Br. 6–8 (quoting 18 U.S.C. § 3663A(b)(4)).

In opposition, defendant argues that regardless of whether the government invited the KPMG audit, investigative costs no longer qualify as "other expenses incurred during participation in the investigation or prosecution of the offense" under 18 U.S.C. § 3663A(b)(4) after *Lagos*. Def.'s Br. 3–6. And even if they did, "there is no evidence that the expenses were incurred at the government's invitation or request." *Id.* at 3 (citation and quotation marks omitted).

**I. "Other Expenses" Still Include Attorneys' Fees and Accounting Costs.**

I turn first to defendant's threshold argument that investigative costs no longer qualify as "other expenses" recoverable under the MVRA after *Lagos*. As noted above, 18 U.S.C. §

---

² Given *Lagos*, I already had stayed my order granting restitution for ConEd's investigative costs pending Mr. Razzouk's appeal. *See United States v. Razzouk*, No. 11-CR-430 (ARR), 2018 WL 3574868, at *2 (E.D.N.Y. July 25, 2018).

4

3663A(b)(4) requires "reimburse[ment]" to "the victim for lost income and necessary child care, transportation, and *other expenses* incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." (emphasis added). In *Lagos*, the Supreme Court observed that § 3663A(b)(4) "says nothing about the kinds of expenses a victim would often incur when private investigations . . . are at issue, namely, the costs of hiring private investigators, attorneys, or accountants." 138 S. Ct. at 1688. Rather, the types of expenses enumerated in the statute—"lost income," "child care," and "transportation"—are "the kind of expenses that a victim would be likely to incur when he or she . . . misses work and travels to talk to government investigators, to participate in a government criminal investigation, or to testify before a grand jury or attend a criminal trial." *Id.*

Defendant claims these observations support defining "other expenses" in § 3663A(b)(4) to exclude the types of costs incurred in private investigations, such as attorneys' fees and accounting costs. Def.'s Br. 4–6. But before *Lagos*, the Second Circuit held that "other expenses" may encompass "attorney fees and accounting costs." *Amato*, 540 F.3d at 159; *see also United States v. Bahel*, 662 F.3d 610, 647 (2d Cir. 2011) ("Attorneys' fees are 'other expenses' that are properly included within a restitution award." (citing *Amato*, 540 F.3d at 159–60)). The Second Circuit reached this conclusion by analyzing "the plain language of the statute." *Amato*, 540 F.3d at 160. It found that the MVRA "gives the district courts broad authority to determine which of the victim's expenses may be appropriately included in a restitution order" and only limits that authority by requiring those expenses to be "necessary," "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense," and "incurred by a 'victim.'" *Id.* (quoting 18 U.S.C. § 3663A(b)(4)). After setting out its plain-meaning reasoning, the Second Circuit rejected the defendant's argument that the *ejusdem generis*

5

canon of statutory interpretation compelled limiting the definition of "other expenses" to those resembling "lost income," "child care," and "transportation." *Id.* at 160–61. "Under this canon, general terms that follow specific ones are interpreted to embrace only objects of the same kind or class as the specific ones." *Id.* at 160. But the canon does not apply "when the specific terms preceding the general one do not themselves have a common attribute from which a 'kind or class' may be defined." *Id.* The Second Circuit found that "no relevant common attribute link[s] lost income, child care expenses, and transportation expenses," and thus the *ejusdem generis* canon could not guide its interpretation of § 3663A(b)(4). *Id.* at 160–61.

*Lagos* does not explicitly invalidate the Second Circuit's plain-meaning analysis. The Supreme Court did not interpret the scope of "other expenses" in *Lagos* but only interpreted the scope of "investigation." 138 S. Ct. at 1687–88. Indeed, the Court left open the question of whether a victim could recover costs "incurred during a private investigation that was pursued at a government's invitation or request," *id.* at 1690, implying that *Lagos* does not foreclose victims from *ever* recovering the types of expenses associated with private investigations under § 3663A(b)(4). Further, at least two district courts in this circuit to address restitution for attorneys' fees after *Lagos* awarded such costs. *See United States v. Afriyie*, No. 16-CR-377 (PAE), 2020 WL 634425, at *1–2 (S.D.N.Y. Feb. 11, 2020); *United States v. Napout*, No. 15-CR-252 (PKC), 2018 WL 6106702, at *4 (E.D.N.Y. Nov. 20, 2018). Thus, *Lagos* does not abrogate *Amato*'s interpretation of "other expenses," and that interpretation remains binding on me.

Defendant's only support for his position, *United States v. Koutsostamatis*, 956 F.3d 301 (5th Cir. 2020), is unpersuasive. There, the Fifth Circuit relied on *Lagos* to hold that "other expenses" does not include "a company's own expenses for investigative services," even if they were incurred as "part of participation in a government investigation." *Id.* at 307. Relying in part

on the *ejusdem generis* canon, the Fifth Circuit reasoned that "other expenses" must be limited to "the kind of expenses that a victim would be likely to incur when he or she . . . misses work"—the unifying theme the *Lagos* Court identified among the enumerated covered expenses in the MVRA. *Id.* at 305 (quoting *Lagos*, 138 S. Ct. at 168). It then concluded that the requested expenses for a "digital security team and outside contractors are not remotely similar to lost income, child care, or transportation," and thus fall outside the scope of § 3663A(b)(4). *Id.* at 308.

The Fifth Circuit's reasoning, however, does not persuade me that *Amato*'s interpretation of "other expenses" no longer is good law in this circuit. Although *Koutsostamatis* determined that *Lagos* supports applying *ejusdem generis* to § 3663A(b)(4), *Amato*'s interpretation of "other expenses" did not turn on the Second Circuit's rejection of *ejusdem generis* but on the court's plain-meaning analysis, which remains undisturbed. *See supra*. Even if *Lagos* invalidated the Second Circuit's reasoning for not applying *ejusdem generis*, that canon "is simply a helpful guide to legislative intent, not a dispositive one." *Amato*, 540 F.3d at 160. Therefore, *Koutsostamatis* does not support disregarding *Amato*'s interpretation of "other expenses" to include attorneys' fees and accounting costs, and I reject defendant's contrary interpretation.

## II. The KPMG Audit Was Not a "Necessary . . . Expense[] Incurred During" ConEd's "Participation" in Restitution Proceedings.

The government claims ConEd's investigative costs remain recoverable under § 3663A(b)(4) because, as the "core evidence" of the company's losses, the KMPG audit was a "necessary . . . expense[] incurred during" ConEd's "participation" in restitution proceedings. Gov't's Br. 6–7. In support, the government invokes two post-*Lagos* cases in which district courts in this circuit held that "the fees and expenses a victim incurs to participate in the process of setting restitution textually qualify as 'expenses incurred during participation in the investigation or prosecution of the offense.'" *Afriyie*, 2020 WL 634425, at *3 (quoting 18 U.S.C. § 3663A(b)(4));

7

*Napout*, 2018 WL 6106702, at *4 ("[L]egal fees incurred by [the victim] to prepare its restitution request were necessary to its attend[ance] [at] th[e] post-verdict restitution proceeding (for which the Court permitted briefing and ordered certain disclosures of billing records) . . . ." (citation and quotation marks omitted)).

Contrary to the government's arguments, however, these cases do not support awarding restitution for ConEd's investigative costs here. First, the costs covered in *Afriyie* and *Napout* were incurred during the months preceding a restitution hearing for the specific purpose of preparing for those proceedings. *See Afriyie*, 2020 WL 634425, at *2–3; *Napout*, 2018 WL 6106702, at *4. By contrast, ConEd incurred the requested expenses relating to the KPMG audit between January 2011 and April 2012—six years before it participated in restitution proceedings. Restitution Order 6, 19. Just because these expenses later became relevant to restitution proceedings does not mean they were incurred *during* participation in those proceedings. Second, the costs covered in *Afriyie* and *Napout* were only those incurred "at the government's request." *Napout*, 2018 WL 6106702, at *4; *Afriyie*, 2020 WL 634425, at *2. In *Napout*, the victim was compensated for attorneys' fees relating to preparing a witness the government called to testify at the restitution hearing and compiling its restitution request "for which the Court permitted briefing and ordered certain disclosures of billing records." 2018 WL 6106702, at *2, *4 (citation omitted). Similarly, in *Afriyie*, the victim was compensated for "representing [the victim] in connection with post-verdict restitution proceedings," for which the government invited the victim's submissions. 2020 WL 634425, at *1, *2; Letter on Behalf of MSD Regarding Restitution, *id.* (No. 16-CR-377 (PAE)), ECF No. 183-2. These limitations align with *Lagos*'s holding that § 3663A(b)(4) "does not cover the costs of a private investigation that the victim chooses on its own to conduct." 138 S. Ct. at 1690. While the Court reached this conclusion only through interpreting the scope of the term

"investigation" in § 3663A(b)(4), it is reasonable to extend the same constraint to the scope of "prosecution." Just as a victim cannot recover expenses incurred during participation in "a private investigation that [it] chooses on its own to conduct," *Lagos*, 138 S. Ct. at 1690, even if that investigation ultimately helps the government's, it should not be able to recover other expenses it "chooses on its own" to incur, *id.*, even if they later become part of its participation in the prosecution. Here, as discussed in the next section, there is no evidence that the government invited or requested the KPMG audit, so ConEd cannot recover these costs as incurred during its participation in the prosecution.

Even if I credited that ConEd's investigative costs were incurred during the company's participation in restitution proceedings, the government has not shown that the KMPG audit was a "necessary" expense. The Second Circuit "takes a broad view of what expenses are 'necessary'" under § 3663A(b)(4). *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) (quoting *United States v. Papagno*, 639 F.3d 1093, 1101 (D.C. Cir. 2011)). It has defined such expenses as those "the victim was required to incur to advance the investigation or prosecution of the offense." *Id.* The government claims the KPMG audit was necessary to ConEd's participation in restitution proceedings because it was "the core evidence of the losses suffered by ConEd" and "the core evidence justifying the $5,902,661 restitution award to ConEd." Gov't's Br. 6. But the government does not explain why that evidence was *required* to advance restitution proceedings. *Maynard*, 743 F.3d at 381. ConEd made an independent choice to commission the KPMG audit upon Mr. Razzouk's arrest, long before restitution proceedings commenced. Restitution Order 6. It could have based its restitution request on the Grassi & Co. audit, commissioned by National Union, which the government admits "largely confirmed KPMG's conclusions." Def.'s Br. 6. And I could have relied on that audit as the core evidence to calculate ConEd's losses with little difference in

9

the outcome.³

Finally, accepting the government's argument would saddle district courts with the "significant administrative burdens" the Supreme Court sought to avoid in *Lagos* when it limited the definition of "investigation." 138 S. Ct. at 1689. By the government's reading of § 3663A(b)(4), "in cases involving multimillion dollar investigation expenses for teams of lawyers and accountants," district courts still would have to determine "whether each witness interview and each set of documents reviewed was really 'necessary'"—just for restitution proceedings instead of for a private investigation. *Id.* It is doubtful that "Congress intended, in making this restitution mandatory, to require courts to resolve these potentially time-consuming controversies as part of criminal sentencing—particularly once one realizes that few victims are likely to benefit because more than 90% of criminal restitution is never collected." *Id.*

For these reasons, I cannot award ConEd investigative costs as necessary to its participation in restitution proceedings.

### III. KMPG's Audit Was Not Invited or Requested by the Government.

Lastly, the government claims ConEd's investigative costs were sufficiently tied to its own investigation to remain recoverable after *Lagos*. Gov't's Br. 7–8. As noted above, *Lagos* left open the question of whether § 3663A(b)(4) mandates restitution for costs incurred in private investigations requested by the government. 138 S. Ct. at 1690. After *Lagos*, district courts in this circuit have interpreted the statute to require restitution for "investigatory activities that the government expressly and specifically 'invited or requested.'" *Napout*, 2018 WL 6106702, at *4; *Afriyie*, 2020 WL 634425, at *2.

---

³ Further, the fact that the KPMG audit helped ConEd "learn how much it overpaid [the defendant's co-conspirator]," Gov't's Br. 7, does not show that it was required to calculate *Mr. Razzouk's* restitution.

10

Here, I had limited ConEd's investigative costs only to those incurred between Mr. Razzouk's arrest and his guilty plea. Restitution Order 18–19. The government claims these costs are still covered post-*Lagos* because they were "incurred during a time period in which the government had invited assistance from the victim and, by extension, the victim's forensic accounting firm to further an investigation of a defendant who had been arrested, but not yet indicted." Gov't's Br. 8. But generally "invit[ing]" ConEd's "assistance," *id.*, does not show that the government "expressly and specifically invited or requested" the KPMG audit.[4] *Napout*, 2018 WL 6106702, at *4. Nor does the fact that the KMPG audit occurred "during a time period" in which the government had sought ConEd's general assistance. Gov't's Br. 8. While the government has offered to provide "additional, more specific information regarding the interactions between the government and ConEd and KPMG," *id.* at 8 n.5, if the government could demonstrate that it "expressly and specifically" requested the KPMG audit, *Napout*, 2018 WL 6106702, at *4, it would have done so by now.

Indeed, ConEd's original brief reveals that the company commissioned the KPMG audit on its own. ConEd stated that "[a]fter Razzouk's arrest, Con Edison turned to KPMG to continue its investigation by conducting a forensic audit . . . . That forensic audit helped the Government and Con Edison to learn how Rudell carried out its criminal scheme. That knowledge contributed to the Government's successful prosecution of Razzouk." ConEd Br. 20, ECF No. 53-1. Helping and contributing to the government's investigation are not enough to trigger mandatory restitution under § 3663A(b)(4). *See Lagos*, 138 S. Ct. at 1690 (holding that a victim's "shar[ing] with the Government the information that its private investigation uncovered" was insufficient to render

---

[4] Defendant asserts that ConEd commissioned the KPMG audit because of "National Union's prosecution of a civil suit against the defendant, his family and Rudell & Associates." Def.'s Br. 3.

11

investigative costs recoverable under the MVRA). Without more, ConEd's investigative costs are not recoverable.

## CONCLUSION

For the foregoing reasons, I decline to award investigative costs to ConEd under the MVRA. An amended judgment will follow.

SO ORDERED.

        /s/
Allyne R. Ross
United States District Judge

Dated:      April 15, 2021
              Brooklyn, New York